UNITED STATES FEDERAL COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JONATHAN M. HINSEY, ) | |
| ) | |
| Plaintiff, ) | Cause No.: 1:08-CV-00114 |
| ) | |
| v. ) | |
| ) | |
| BETTER BUILT DRY KILNS, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is a Motion for Approval of Alternative Service (Docket # 21) filed by Plaintiff Jonathan M. Hinsey, requesting that the Court enter an order approving service by publication to Defendant DeNardi, s.r.l., a/k/a Nardi Group and Nardi Partecipazioni, s.r.l. ("DeNardi"), which Hinsey represents are "corporate entities located in Italy". For the following reasons, Hinsey's motion will be DENIED.

### A. Background

Hinsey filed this product liability suit against Defendants Better Built Dry Kilns, Inc. ("Better Built"), and DeNardi on April 30, 2008, seeking damages for injuries he suffered when he fell into an "open pit of super-heated liquid in a lumber steamer designed, manufactured, sold, constructed and installed by Defendants." (Compl. ¶ 1.) He served a summons and complaint to Better Built on April 30, 2008, and Better Built appeared in this suit on May 21, 2008. (Docket # 2, 3.)

On July 16, 2008, the Court conducted a conference, at which Hinsey advised the Court about the status of his service on DeNardi in Italy. (Docket # 10.) On August 29, 2008, and

again on February 12, 2009, Hinsey filed status reports with the Court concerning his service on DeNardi; he explained that he had contracted with Process Forwarding International ("PFI") to translate and serve the materials on DeNardi in Italy through its Central Authority, and that PFI reported that it is not unusual for service there to take as long as one year. (Docket # 11, 13.)

The Court conducted a scheduling conference on March 20, 2009, with Hinsey and Better Built. (Docket # 17.) A discovery deadline of December 31, 2009, was established. (Docket # 17.)

On May 26, 2009, Hinsey filed the instant motion, requesting that the Court enter an order under Federal Rule of Civil Procedure 4(f)(3) approving alternative service on DeNardi in Italy. (Docket # 21.) More specifically, he requested that the Court approve service by publication in English in two Italian newspapers circulated in Verona, Italy (DeNardi's last known location), once a week for four weeks. (Mot. for Approval of Alternative Service ¶ 4.) In the motion, Hinsey asserted that he had "made diligent effort" to serve DeNardi but that his efforts had been unsuccessful, explaining that the Italian authorities responsible for serving DeNardi returned the complaint with the notation that DeNardi had gone into bankruptcy in the last few months.[1] (Mot. for Approval of Alternative Service ¶ 3.)

On May 28, 2009, the Court took the motion under advisement and set a hearing, detailing in its Order several issues that would be discussed at the hearing, including whether Hinsey had attempted any other method of service or used any other agent, and whether DeNardi has actual knowledge of the suit. (Docket # 24, 25.) Then, at the June 5, 2009, hearing, the

---

[1] Hinsey is not deterred from serving DeNardi upon the news of its bankruptcy, stating that he believes DeNardi has insurance coverage "which may apply to this loss regardless if it has since declared bankruptcy." (Brundage Aff. ¶ 5.)

2

Court ordered Hinsey to file a supplemental brief on these issues of inquiry. (Docket # 25.) Hinsey has now done so. (Docket # 26.)

In his supplemental brief, Hinsey explains that he has made just one attempt to serve DeNardi through PFI and Italy's Central Authority, which as explained *supra*, resulted in the return of the materials to Hinsey unexecuted with the explanation that DeNardi "went bankrupt a few months ago." (Supplemental Mem. in Supp. of Mot. for Approval of Alternative Service 2.) PFI has informed him that it would be unproductive to attempt service a second time in the same manner. (Supplemental Mem. 2-3.)

Hinsey purports that DeNardi's insurance broker has already received a copy of the complaint from Better Built, and furthermore, that he plans to serve a subpoena on the broker for the production of insurance agreements; therefore, he believes that the insurance broker has, or soon will have, actual notice of the suit. (Supplemental Mem. 4.) He further explains that he sent copies of the complaint and summons in both English and Italian "to what is thought to be the successor company" to DeNardi. (Supplemental Mem. 5.) And, after learning that DeNardi's website is operational, Hinsey also e-mailed copies of the complaint and summons in both English and Italian to the e-mail addresses listed on DeNardi's website, receiving a successful delivery status notification. (Supplemental Mem. 8.)

Finally, in his supplemental brief, Hinsey requests that the Court approve service to DeNardi by publication in English in the International Herald Tribune once a week for three consecutive weeks. (Supplemental Mem. 9.) Notably, this is a change from his initial request – that the Court approve service by publication in English in *two* Italian newspapers circulated in Verona, once a week for *four* weeks.

*B. Applicable Law*

Federal Rule of Civil Procedure 4(f) governs service of process upon individuals in foreign countries, stating that service may be accomplished:

(1)     by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ;

(2)     if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice;

       (A)     as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

       (B)     as the foreign authority directs in response to a letter rogatory or letter of request; or

       (C)     unless prohibited by the foreign country's law, by:

             (i)     delivering a copy of the summons and of the complaint to the individual personally; or

             (ii)     using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3)     by other means not prohibited by international agreement, as the court orders.

Here, Hinsey's request for service by publication arises under Rule 4(f)(3).

A court is "afforded wide discretion in ordering service of process under Rule 4(f)(3)." *S.E.C. v. Anticevic*, No. 05 CV 6991(KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (quoting *BP Prods. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006)). Rule 4(f)(3) "provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." *Id.* (quoting *BP Prods.*, 236 F.R.D. at 271); *see also Smith v. Islamic Emirate of Afghanistan*, Nos. 01 CIV 10132 (HB),

4

01 CIV 10144(HB), 2001 WL 1658211, at *3 (S.D.N.Y. Dec. 26, 2001). "When exercising that discretion courts should indeed make 'an earnest effort . . . to devise a method of communication that is consistent with due process and minimizes offense to foreign law.'" *BP Prods.*, 236 F.R.D. at 271-72 (quoting *Export-Import Bank of the United States v. Asia Pulp & Paper Co.*, No. 03Civ.8554(LTS)(JCF), 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005)). "In order to fulfill due process requirements under Rule 4(f)(3), the Court must approve a method of service that is 'reasonably calculated, under all the circumstances' to give notice to defendant." *Id*.

"Federal courts have recognized the validity of service by publication where other means have failed." *Id*. For example, "[w]here the plaintiff can show that deliberate avoidance and obstruction by the defendant [has] made the giving of notice impossible, statutes and case law have allowed substitute notice by mail and by publication in media of general and wide circulation." *Id.* (quoting *S.E.C. v. Tome*, 833 F.2d 1086, 1092 (2nd Cir. 1987)). Also, when a defendant's exact whereabouts are unknown, service by publication for a defendant in a foreign country has also been recognized. *Id*. (citing *Tome*, 833 F.2d at 1091-93).

Thus, "[f]rom the limited case law in the area, it is clear that serve by publication to a defendant in a foreign country is an acceptable alternative means under 4(f)(3), so long as diligent attempts have been made to locate the defendant and serve process by traditional means, and the publication is one that likely would reach the defendant."[2] *Id*. "Additionally, courts in previous cases have noted the importance of the defendant possessing some knowledge that he might be subject to a suit." *Id*. (citing *Tome*, 833 F.2d at 1093; *Smith*, 2001 WL 1658211, at *3;

---

[2] Nonetheless, at least one court has held that a plaintiff is not *required* to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3). *See Anticevic*, 2009 WL 361739, at *3.

*Blum v. Koch*, 716 F. Supp. 754, 764 (S.D.N.Y. 1989)).

Thus, before approving service by publication, a district court may require a plaintiff "to show that [he] ha[s] reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary . . . ." *Anticevic*, 2009 WL 361739, at *3 (quoting *Export-Import Bank*, 2005 WL 1123755, at *4).

## C. Analysis

Here, Hinsey made just one attempt to serve DeNardi in Italy through its Central Authority pursuant to the Hague Convention prior to filing the instant motion requesting that he be allowed to serve DeNardi through publication. Thus, at the outset, Hinsey faces an uphill course in convincing the Court that he has made "diligent attempts" to serve DeNardi through traditional means. *See BP Prods.*, 236 F.R.D. at 272 (quoting *Tome*, 833 F.2d at 1092).

And, the case law that Hinsey cites in support of his motion involve defendants who were deliberately avoiding or willfully obstructing service or whose addresses were unknown. *See Anticevic*, 2009 WL 361739, at *1-3; *U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset*, No. 07 C 3598, 2008 WL 4299771, at *4 (N.D. Ill. Sept. 17, 2008); *BP Prods.*, 236 F.R.D. at 271. But here, Hinsey has not suggested, nor provided any evidence, that DeNardi is deliberately avoiding or willfully obstructing service, and he readily admits that "[t]his is not a case where there is no known address for DeNardi." (Supplemental Mem. 3.); *see BP Prods.*, 236 F.R.D. at 272. As Hinsey sees it, "[t]he problem is not identifying DeNardi's address, rather it is in serving an entity which has no present existence . . . ." (Supplemental Mem. 3.)

Hinsey's reasoning is a bit circular in that regard. If DeNardi truly has no "present existence" as he suggests, one is left to wonder who exists on DeNardi's behalf to read the

6

publication he seeks to post in the newspaper.  Furthermore, Hinsey's request to publish the notice solely in English seemingly defies logic, considering that DeNardi is an Italian company.  As explained *supra*, a focus of the Court's inquiry is whether the publication "likely would reach the defendant", *BP Prods.*, 236 F.R.D. at 272, and a notice to an Italian company published in English does not necessarily further that objective.

Moreover, Hinsey has given the Court no assurance that DeNardi has actual knowledge of this lawsuit. (Supplemental Mem. 7 ("It is unknown whether DeNardi has actual knowledge of this action.")); *see BP Prods.*, 236 F.R.D. at 272.  Admittedly, since filing the motion, Hinsey has taken additional steps in an effort to provide DeNardi with actual notice of the suit.  He sent a copy of the summons and complaint to DeNardi's e-mail address listed on its website and to its purported successor company.  He also represents that he plans to serve a subpoena on DeNardi's insurance broker for discovery purposes, and that Better Built has purportedly already provided DeNardi's insurance broker with a copy of the summons and complaint, thereby increasing the odds that DeNardi receives actual notice of this suit.

Yet, there is at least one curious void in Hinsey's service efforts.  That is, Hinsey has not attempted to locate DeNardi's Italian bankruptcy counsel or trustee equivalent to effect service, or at least provide actual notice to them, as DeNardi's agent. *See BP Prods.*, 236 F.R.D. at 272 (approving service by publication after plaintiff attempted service twice under the Hague Convention, hired an investigative services firm that was unable to locate defendant, *and attempted to serve defendant through his attorney*).  If DeNardi has in fact recently filed bankruptcy, it stands to reason that it has secured an attorney, or a trustee has been appointed, to administer that action.

7

And, as a final point, the Court is not particularly persuaded by Hinsey's assertion that service to DeNardi falls outside of the Hague Convention due to DeNardi's bankruptcy, particularly given the fact that Hinsey admits elsewhere in his briefing that DeNardi's address is *not* unknown. *See, e.g., U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset*, No. 07 C 3598, 2008 WL 4299771, at *4 (N.D. Ill. Sept. 17, 2008) (stating that the Hague Convention does not apply when a defendant's address is unknown); *B.P. Prods.*, 236 F.R.D. at 271 (same). "As a ratified treaty, the Convention is of course the supreme law of the land." *Trump Taj Mahal Assocs. v. Hotel Servs.*, 183 F.R.D. 173 (D.N.J. 1998) (citation and internal quotation marks omitted); *see generally Hagenbuch v. 3B6 Sistemi Elettronici*, No. 04 C 3109, 2005 WL 6246195, at *1 (N.D. Ill. Sept. 12, 2005) (stating that Italy and the United States are both signatories to the Hague Convention). "The Hague Convention provisions are mandatory; failure to comply voids the attempted service." *R. Griggs Group Ltd. v. Filanto Spa*, 920 F. Supp. 1100, 1102 (D. Nev. 1996) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)).

Though, as Hinsey contends, it may well be unproductive "to attempt service a second time in the same manner" under the Hague Convention (Supplemental Mem. 2-3), the Convention provides *several* avenues for service: that is, through a country's Central Authority, through diplomatic channels or consular agents, by any method of service permitted by the internal laws of the country in which service is being made, and in some jurisdictions, service by registered mail. *See Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 470-71 (D.N.J. 1998). Hinsey has been silent in his briefing regarding the viability of any methods other than through the Central Authority and leaps to equate DeNardi's bankruptcy filing with the circumstances of

8

an unknown address, perhaps in an effort to effect process through a simpler method than those prescribed by the Convention. Additionally, Hinsey has made no effort to explore in his briefing and cite relevant authority concerning whether service by publication is "prohibited by [any] international agreement", Fed. Rule Civ. P. 4(f)(3), between Italy and the United States.

Considering all of the foregoing, the Court will at this juncture DENY Hinsey's request for approval of alternative service by publication. Hinsey is, however, free to re-petition the Court if additional attempts of service to DeNardi are unsuccessful, and the Court will reconsider his request for service by publication.

### *D. Conclusion*

For the foregoing reasons, Plaintiff's Motion for Approval of Alternative Service (Docket # 21), requesting that the Court enter an Order approving service by publication to Defendant DeNardi, is DENIED.

SO ORDERED.

Entered this 22nd day of June, 2009.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge